**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN C. SECREST and SHERRY McCALL,

        Plaintiffs,         Case Number: 09-CV-10332

v.         JUDGE PAUL D. BORMAN
        UNITED STATES DISTRICT COURT

INDYMAC F.S.B. and INDYMAC FEDERAL
BANK,

        Defendants.
_____ /

**OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER; AND**
**(2) GRANTING DEFENDANTS' REQUEST FOR DISMISSAL**

        Now before the Court is Plaintiffs' Motion for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b). The motion hearing was held on February 5, 2009. In their response, Defendants contend, *inter alia*, that the Court should dismiss this case because the Court lacks subject matter jurisdiction over Plaintiffs' claims. Because Plaintiffs' have not exhausted their administrative remedies, the Court dismisses the action. Even if this Court had jurisdiction, the Court denies Plaintiffs' Motion for a Temporary Restraining Order because Plaintiffs have not established a likelihood of success on the merits.

**I.     BACKGROUND**

        Plaintiffs John C. Secrest ("Secrest") and Sherry McCall ("McCall") are individuals, residing in Livingston County, Michigan. (Compl. ¶ 1). Plaintiff Secrest had a mortgage on his house that was generated by MortgageIt, Inc. but that was subsequently transferred to Defendant IndyMac Bank, F.S.B.

Before July 11, 2008, Defendant IndyMac Bank, F.S.B. was a foreign corporation conducting business in Livingston County, Michigan. (*Id.* ¶ 3). On July 11, 2008, IndyMac Bank F.S.B. was closed by the United States Office of Thrift Supervision ("OTS") and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of IndyMac Bank F.S.B. (Defs.' Br. Ex. M; Hrg. Ex. 1, OTS Order No. 2008-24). Subsequently, Defendant IndyMac Federal Bank, F.S.B. was created by the OTS and the FDIC was appointed by the OTS as conservator. Plaintiff listed IndyMac F.S.B and IndyMac Federal Bank (collectively "Defendants") in his Complaint.

On February 7, 2006, Secrest executed a mortgage ("Mortgage") to Mortgage Electronic Registration Systems, Inc., as nominee for MortgageIt, Inc., which was defined as the "Lender" under the Mortgage, on property located in Livingston County, Michigan ("Property"), as security for a loan in the original principal amount of $1,000,000. (*Id.* ¶ 3).[1] The Mortgage was subsequently assigned to Defendants on December 27, 2007, pursuant to an assignment of mortgage, which was recorded on January 7, 2008.

Under the Mortgage, Secrest was required to pay the debt evidenced by the note, including any prepayment charges and late charges. (Pls.' Br. Ex. A). Secrest made his last monthly payment to Defendants on August 31, 2007. The payment was applied to the mortgage payment due on August 1, 2007.

---

[1] On September 28, 2005, Secrest executed a future advance mortgage on the Property to HSBC Mortgage Corporation as security for a line of credit in the amount of three hundred eighty two thousand dollars. On February 1, 2006, HSBC Mortgage Corporation executed and recorded against the Property a subordination agreement, which states that the future advance mortgage is subordinate to the Mortgage.

On or about November, 16, 2007,[2] Defendants sent a letter to Secrest informing him that he was in default and that he could cure the default by remitting the payment due September 1, 2007, plus late charges and fees and any additional monthly payments, late charges, and fees that become due by December 18, 2007. (Defs.' Br. Ex. E). The letter specifically provides: "If you do not cure your default, we will accelerate your mortgage with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." (*Id*.).

On January 3, 2008, Defendants' counsel sent Secrest a letter outlining the debt owed by Secrest and advising him of the impending foreclosure procedures. (Defs.' Br. Ex. E). The letter also informs Secrest that Defendants have elected to accelerate the total indebtness but that Secrest could still reinstate the Mortgage if he pays all past due instalments and other costs and fees due to Defendants. (*Id*.).

On January 30, 2008, the Property was sold at a sheriff's sale for $607,500, with Indymac as the high bidder. (*Id*. ¶ 13). IndyMac then set a redemption period of one year, which expired on January 30, 2009. (*Id*. ¶ 14).

On or about September 22, 2008, Secrest faxed a hardship letter, appraisal, and proposed third-party purchase agreement for the Property to Defendants. Under the short sale offer, Plaintiff McCall offered to purchase the Property for $240,000.

On December 18, 2008, Secrest sent an e-mail to Steve Clarke, an agent for Defendants, forwarding him more information about the Property and seeking a decision on the proposed short sale offer as soon as possible. (Defs.' Br. Ex. H).

---

[2] The Mortgage was not assigned to Defendants until December 27, 2007—after Defendants sent Secrest the letter informing him that he was in default.

On December 22, 2008, an agent for Defendants, responded to Secrest's e-mail: "My manager advised me to go ahead and process the short sale as is, the file is only missing the listing agreement/ listing history if you could provide that to me." (*Id*.). That same day, Secrest responded to Clarke, thanking him for approving the short sale and informing him that he would contact him with the requested information. (*Id*.).

Clarke responded later that day as follows:

> No you misunderstand, the short sale is not approved. He reviewed the information you sent me and is hesitant to make the call solely on the information provided, so I finished running the short sale information he requested (loss calculations, origination review etc) and he wants a full picture and he sent me the information you provided along with our value to the chief appraiser for another look at it again. We still haven't come to any solution however we want to see the listing and the history of what it was marketed at.

(*Id*.).  Still later that same day, Secrest responded by acknowledging that a decision has not yet been made with respect to the short sale offer and pleaded with Clarke to please move along the decision. (*Id*.).  The short sale was ultimately rejected by Defendants.

On January 16, 2009, Plaintiffs filed a Complaint against Defendants in Livingston County Circuit Court alleging breach of contract and tortious interference with contractual relations and a Motion for Temporary Restraining Order seeking to enjoin the expiration of the statutory redemption period of the Property.

On January 29, 2009, Defendants removed the action to this Court pursuant to 12 U.S.C. 1819(b)(2)(B), which allows the FDIC to remove any case filed against it or cases where it is substituted as a party. That same day, Plaintiffs filed a Motion for Temporary Restraining Order in this Court. On January 30, 2009, the Court issued a Temporary Restraining Order staying the expiration of the redemption period until a hearing on Plaintiffs' Motion could be held. Defendants

responded to Plaintiffs' Motion on February 2, 2009. At the hearing, the Court extended the redemption period again until it could issue a written decision on Plaintiffs' Motion.

## I. BACKGROUND

### A. Defendants as Proper Parties and Subject Matter Jurisdiction

Plaintiffs name IndyMac, F.S.B. and IndyMac Federal Bank as Defendants. According to Defendants, however, the OTS closed "IndyMac Bank, F.S.B." on July 11, 2008, and the FDIC was appointed receiver of IndyMac Bank, F.S.B. (Defs.' Br. Ex. M). In addition, the OTS also issued a charter to set up a new bank called "IndyMac Federal Bank, F.S.B." and appointed the FDIC as Conservator. Thus, not only have Plaintiffs failed to provide the correct names of Defendants in their Complaint (i.e. IndyMac, F.S.B, instead of IndyMac Bank, F.S.B. and IndyMac Federal Bank, instead of IndyMac Federal Bank, F.S.B..), but they also did not name the FDIC as a party.

Plaintiffs' failure to provide the complete names of the Defendant is of no consequence given that Defendants received notice of the suit. The appointment of the FDIC as a conservator, however, is of much greater significance.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") prescribes administrative procedures for the adjudication of claims against institutions for which the FDIC has been appointed receiver. *See* 12 U.S.C. § 1821(d)(3)–(13). Under section 1821(d)(13)(D), claimants must exhaust this administrative process before having their claims reviewed by a federal court. According to that section, "no court shall have jurisdiction over . . . any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver." 12 U.S.C. §

1821(d)(13)(D)(i). Thus, failure to exhaust the administrative procedures deprives federal courts of subject matter jurisdiction over the claims.

Plaintiffs argue that section 1821(d)(13)(D) does not apply here because FIRREA applies only to claims of a creditor of a bank in receivership and not to claims made by the bank's debtors. The Court does not agree.

In general, the circuits have held that debtors' actions are subject to FIRREA exhaustion. *See, e.g.*, *McCarthy v. FDIC*, 348 F.3d 1075, 1076 (9th Cir. 2003) (holding that FIRREA exhaustion applied to debtors with claims that affect the assets of the institution); *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 714–15 (8th Cir. 1996) ("The great weight of authority holds that FIRREA requires debtors as well as creditors to undergo the administrative review process."); *Freeman v. FDIC*, 56 F.3d 1394, 1401–02 (D.C. Cir. 1995) (holding that section 1821(d) extends to debtors' claims); *see also In re Lexis*, 398 F.3d 735 (6th Cir. 2005) (holding that section 1821(d)(13)(D) applied to persons other than creditors of a bank); *but see Bolduc v. Beal Bank, SSB*, 167 F.3d 667 (1st Cir. 1999) (finding that FIRREA's exhaustion requirement did not apply where the plaintiffs, as debtors of the failed bank, sought to enjoin foreclosure on their property by claiming that the bank allegedly violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.).

Plaintiffs argued at the hearing that even if the FIRREA governed their claims, they were not required to exhaust their administrative remedies because they never received the statutorily-required notice of the period within which claims were to be filed against Defendants.

Section 1821(d)(3)(C) requires the receiver to "mail a notice [of the period within which claims are to be filed] . . . to any creditor shown on the institution's books." While it appears that neither the FDIC or Defendants submitted any type of notice to Secrest of the appointment of FDIC

as receiver, the circuits hold that the failure of such notice does not relieve the claimant of the obligation to exhaust FIRREA's administrative remedies. *See, e.g.*, *McCarthy*, 348 F.3d at 1081 (holding that "failure to give notice does not render the administrative process inapplicable"); *Freeman*, 324 F.3d at 1402 (same); *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (1st Cir. 1992) (finding that receiver's failure to provide notice does not waive the administrative exhaustion obligation). According to the *Freeman* court,

> The only statutorily-specified exemption from the strict requirements of the administrative claims process is proved "if the claimant did not receive notice of the appointment of the receiver in time to file . . . [a] claim," 12 U.S.C. § 1821(d)(5)(C) . . . , and even in that case the only consequence is that the FDIC "may" consider a late-filed claim, provided the claim is filed "in time to permit payment."

*Freeman*, 324 F.3d at 1402. Thus, even if Plaintiffs did not receive notice of the FDIC's receivership until it filed this suit against Defendants, Plaintiffs nonetheless are required to exhaust their administrative remedies under the FIRREA.

Accordingly, the Court finds that it does not enjoy subject matter jurisdiction over Plaintiffs' claims.[3]

  **B.  Temporary Restraining Order**

    **1.  Legal Standard**

---

[3] Although not asserted by the Defendants, 12 U.S.C. § 1821(j) would also seem to bar Plaintiffs' claims against Defendants—albeit not jurisdictionally. Section 1821(j) provides in part that "no court may take any action . . . to restrain or affect the exercise of the powers or functions as the FDIC as a conservator or receiver." In this case, Plaintiffs seek to enjoin the FDIC, as receiver and conservator for Defendants, from completing the foreclosure proceedings on the Property. Any such relief granted by this Court would be in violation of section 1821(j). *See Freeman*, 56 F.3d at 1399 ("[T]he FDIC's broad powers as receiver include the power to foreclose on the property of a debtor held by the failed bank as collateral, and no court may enjoin the exercise of that power.") (citing *Lloyd v. FDIC*, 22 F.3d 335, 336–37; *Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991), *cert. denied*, 502 U.S. 1057 (1992)).

The decision of whether or not to issue a temporary restraining order or preliminary injunction lies within the discretion of the district court. *See CSX Transp., Inc. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 552 (6th Cir. 1992). In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). "These same factors are used to determine a motion for a temporary restraining order." *Lozano v. City of Hazleton*, 459 F. Supp. 2d 332, (M.D. Pa. 2006). The four factors are to be viewed as a whole, with each leg of the test balanced against and among the others. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). A district court must make specific findings concerning each of the four factors unless fewer are dispositive of the issue. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995).

### 2.     Temporary Restraining Order Factors

#### i.     Likelihood of Success on the Merits

Under the first factor, Plaintiffs must demonstrate that there is a strong likelihood that they will prevail on the merits of any of their three counts in their Complaint.

As discussed above, Plaintiffs allege breach of contract and tortious interference with contract. Plaintiffs' claims involve two separate issues: (1) the alleged defects in notice guaranteed under the Mortgage and (2) an alleged repudiation of the short sale.

First, as to the alleged defects in notice, the Court finds that Plaintiffs have not established a likelihood of success on the merits.  Contrary to Plaintiffs' assertions in their brief, Defendants did provide Secrest with the notice due under the Mortgage by way of their letter dated November 17, 2007. (Defs.' Br. Ex. E).  That letter appears to be carefully drafted so that it strictly abides by the notice provisions in the Mortgage.  Although the Mortgage requires that notice be sent by the Lender, which at that point was still MortgageIt, Inc., Secrest does not dispute receiving the notice and being informed that he had a limited time and opportunity in which to cure his default of the Mortgage before the Mortgage would go into foreclosure.  Indeed, Secrest did not object to the alleged deficient notice when he attempted to negotiate the short sale between Defendants and McCall. Therefore, it is clear that Secrest had notice, and he cannot now argue that he failed to cure his default or that Defendants did not provide him with adequate notice due under the Mortgage merely because Defendants provided Secrest with the notice before MortgageIt, Inc. assigned the Mortgage to them.

Likewise, the Court finds that Plaintiffs have not established a likelihood of success on their claims involving the alleged repudiation of the short sale.  Plaintiffs submit that they entered into an agreement with Defendants that allowed for a short sale of the Property to McCall.  They claim that Defendants accepted McCall's $240,000 short sale offer when Steven Clarke sent an e-mail to Secrest stating that "my manager advised me to go ahead and process the short sale as is."  (Defs.' Br. Ex. H).

In Michigan, it is well settled that there must be mutual assent amongst the parties in order to form a valid contract.  *Independence Township v. Reliance Bldg. Co.*, 175 Mich. App. 48, 53 (1989).  In other words, a valid contract requires a valid offer and valid acceptance.  *Id*.  If an

9

acceptance is ambiguous or not in strict compliance with the terms of the offer, no contract is formed. *Id*.

Clarke's statement that he was instructed "to go ahead and process the short sale as is" is not a clear and definite statement of acceptance. At best, it is ambiguous. Clarke's reply to Secrest sent only three minutes later stating that Secrest was misunderstood and that the short sale is not approved is further evidence that his statement was not an acceptance. Furthermore, Clarke's request in the e-mail to Secrest, asking him to send him "missing" listing agreement and listing history is further evidence that an agreement had not been reached.

### ii. **Irreparable Harm to Plaintiff**

As noted by Defendants, Secrest has had a year to redeem the Property and has not made a payment on the Mortgage since August 2007. Allowing the redemption period to expire will not cause irreparable injury to Plaintiffs as Secrest does not have the funds to redeem the Property and McCall has numerous opportunities to find other homes to purchase at discounted rates given the current housing market in Michigan.

### iii. **Harm to Others and Public Interest**

Given the unlikelihood of Plaintiffs' success on the merits combined with Plaintiffs' inability to show that they will be irreparably harmed, the Court need not examine the last two factors—substantial harm to other and the public interest. *See Edwards v. Burnett*, Case No. 05-73790, 2006 U.S. Dist. LEXIS 46895, at *2 (E.D. Mich. July 12, 2006).

### III. CONCLUSION

For all these reasons, the Court DENIES Plaintiff's Motion for a Temporary Restraining Order and DISMISSES the action.

**SO ORDERED.**

```
                                        S/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE
```

Dated:  February 9, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 9, 2009.

```
                                        S/Denise Goodine
                                        Case Manager
```

11